# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 6230 | **DATE** | 9/30/2002 |
| **CASE TITLE** | Rodney J. Watt vs. City of Highland Park, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' motion to dismiss plaintiff's amended complaint for failure to state a claim [11-1] is denied. Defendants shall have twenty days from the entry date of this order to answer the amended complaint.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | |
| | Notices mailed by judge's staff. | | | | |
| ✓ | Notified counsel by telephone. | | | SEP 30 2002 date docketed | |
| ✓ | Docketing to mail notices. | | | | 20 |
| | Mail AO 450 form. | U.S. DISTRICT COURT | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | | |
| RJ/ea | courtroom deputy's initials | 02 SEP 30 PM 3: 35 | | date mailed notice | |
| | | Date/time received in central Clerk's Office | | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| RODNEY J. WATT, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 01 C 6230 |
| v. | ) | |
| | ) | |
| CITY OF HIGHLAND PARK, et al., | ) | Judge Joan B. Gottschall |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Rodney Watt is a former police officer for the City of Highland Park. In his four-count amended complaint ("the complaint"), brought pursuant to 42 U.S.C. § 1983 and Illinois state law, Watt alleges that defendants City of Highland Park ("City"), its Police Chief Daniel J. Dahlberg and thirteen other Highland Park police officers or officials retaliated against him for exercising his First Amendment rights by investigating him, bringing baseless complaints against him, suspending him, and ultimately terminating him.

Defendants have moved to dismiss the entire complaint pursuant to Fed. R. Civ. P. 12(b)(6), arguing that Watt's claims are: (1) barred by claim preclusion; (2) precluded by the factual findings made by the Civil Service Commission of Highland Park ("Commission") that resulted in Watt's termination; and (3) fail to state actionable claims.

## I. BACKGROUND

Defendants' preclusion arguments are based on the "Findings, Final Decision and Order" of the Highland Park Civil Service Commission, entered November 27, 2001.[1] The Commission's order indicates that Chief of Police Dahlberg filed a Statement of Charges with

---

[1] On a motion to dismiss, the court may take judicial notice of documents that are a matter of public record. *Doherty v. City of Chicago*, 75 F.3d 318, 324 n.4 (7th Cir. 1996).

the Commission, containing thirty-seven disciplinary charges against Watt and seeking Watt's termination. The Commission held hearing sessions during five days and heard from numerous witnesses, including Watt. The Commission found Watt guilty on twenty-one disciplinary charges resulting from complaints CR 00-016, CR 00-029, CR 00-030, CR 00-056, and CR 00-068, which related to five separate incidents between February 15, 2000 and December 17, 2000 ("the Incidents").

Under Illinois law, Watt had a right to judicial review of the Commission's order, if he sought an appeal within 35 days of the decision. 65 ILCS 5/10-1-45; 735 ILCS 5/3-103. Watt did not appeal the Commission's order. Instead, on January 11, 2002, he amended his complaint in this action, which had been pending since August 14, 2001, to seek relief for (1) retaliation, harassment and intimidation in violation of his First Amendment rights against both the City and the individual defendants pursuant to 42 U.S.C. § 1983 (Counts I and II), (2) retaliatory discharge in violation of his First Amendment rights against the City and Dahlberg pursuant to 42 U.S.C. § 1983 (Count III), and (3) retaliatory discharge against the City under Illinois state law (Count IV).

## II. ANALYSIS

Claim preclusion bars subsequent relitigation of claims arising out of the same transaction at issue in prior litigation, whether or not those claims were actually litigated, whereas issue preclusion bars relitigation of issues that were actually litigated. *Jones v. City of Alton*, 757 F.2d 878, 884 (7th Cir. 1985). Defendants here argue that both forms of preclusion apply. For the reasons explained below, the court finds that claim preclusion is unwarranted, but that issue preclusion applies and prevents Watt from relitigating the Commission's findings of fact.

A. Claim Preclusion

In cursory fashion in their opening brief, defendants argue that under the doctrine of claim preclusion,[2] the Commission's order precludes each of Watt's claims. Specifically, defendants argue that because Watt could have appealed the Commission's order and raised his § 1983 claims in that appeal, his claims are foreclosed. This argument is fatally flawed.

Relying upon *Durgins v. City of East St. Louis*, 272 F.3d 841, 843 (7th Cir. 2001), defendants correctly point out that under Illinois law Watt could have joined his § 1983 claims with an administrative-review action in state court. *Id.*; *Davis v. City of Chicago*, 53 F.3d 801, 803 (7th Cir. 1995) (citing *Stratton v. Wenona Comm. Unit Dist. No. 1*, 551 N.E.2d 640, 646-47 (Ill. 1990)). In *Durgins*, the Seventh Circuit held that where an employee initiates an administrative-review action in state court challenging an administrative agency's termination decision, and the employee fails to raise related § 1983 claims in the state court action, claim preclusion bars the employee from bringing his § 1983 claims in federal court. *Durgins*, 272 F.3d at 843-44. A federal court must give a state court judgment the same claim-preclusive effect it would be given in the courts of the rendering state. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 80 (1984). Illinois courts apply "the doctrine of merger and bar, precluding sequential pursuit not only of legal theories actually litigated but also of those that could have been litigated in the first action." *Durgins*, 272 F.3d at 843. Thus, the Seventh Circuit explained:

---

[2]Actually, defendants couch this argument in terms of *res judicata*. *Res judicata* in its narrow sense means claim preclusion, not issue preclusion. *Jones v. Alton*, 757 F.2d 878, 884 (7th Cir. 1985). But *res judicata* is also sometimes used more broadly to refer to both claim and issue preclusion. *Id.* To avoid any confusion, the court uses "claim preclusion" rather than "*res judicata.*"

3

>  Because Illinois (a) permits the joinder of § 1983 claims with administrative-review actions, and (b) applies the doctrine of merger and bar, we have held that an administrative-review action forecloses any later § 1983 action in federal court arising out of the same transaction.

*Id.* Accordingly, if Watt had sought judicial review of the Commission's order, then his § 1983 claims in this action would be barred.

But Watt did not initiate an administrative-review action. This distinction is critical. Final state court judgments, like the judgment at issue in *Durgins*, must be given claim-preclusive effect in subsequent federal court actions under the full faith and credit requirements of 28 U.S.C. § 1738. *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 794 (1986).[3] However, there is no state court judgment here, and the Supreme Court has explicitly held that § 1738 does not apply to *unreviewed* state administrative decisions like the Commission's order. *Id.*

Absent a statute requiring the application of state law claim-preclusion principles, courts look to the federal common law. *Id.*; *Carver v. Nall*, 172 F.3d 513, 515 (7th Cir. 1999). Traditional federal common law principles of claim preclusion do not bar Watt's § 1983 claims. As a general rule, the federal common law "includes a principle commanding deference to state laws of claim preclusion." *Waid v. Merrill Area Pub. Sch.*, 91 F.3d 857, 865 (7th Cir. 1996). Ordinarily, if an Illinois court would give an administrative decision claim-preclusive effect, so would this court. There is, however, an important exception to this general rule:

>  [F]ederal courts will not decline to hear claims pertaining to federal rights solely

---

[3]Indeed, the Supreme Court's holding in *Elliott* suggests that an unreviewed administrative decision is not claim-preclusive in subsequent § 1983 actions. There the plaintiff, like Watt, proceeded with his civil rights claims in federal court rather than initiating an administrative-review action. *Elliott*, 478 U.S. at 792. The Court's decision addresses issue preclusion rather than claim preclusion. *Id.* at 794-99. Had the Court thought that claim preclusion applied, the question of issue preclusion would have been moot.

4

> on the basis of state [claim preclusion] principles. The federal common law of claim preclusion will provide an independent basis for decision when state law would unduly inhibit the pursuit of federal rights.

*Waid*, 91 F.3d at 865.

As defendants concede, Watt properly could have raised his § 1983 claims for the first time in an administrative-review proceeding, *Durgins*, 272 F.3d at 843; this strongly suggests that as a matter of state law he was not required first to raise those claims before the Commission. Indeed, defendants do not suggest (and it seems unlikely) that the Commission could have granted Watt relief on his § 1983 claims. "Claim preclusion does not apply so harshly as to bar . . . claims the [administrative] forum could not hear." *Carver*, 172 F.3d at 516. If the Commission lacked authority to award Watt relief on his federal claims, then according the Commission's order claim-preclusive effect would constitute undue interference with Watt's federal rights. *Waid*, 91 F.3d at 865. To this court's knowledge, the Seventh Circuit has never given claim-preclusive effect to an unreviewed administrative decision when presented with facts analogous to those at bar.[4] Accordingly, even assuming that an Illinois court would deem the

---

[4]Defendants' reliance on *Pirela v. Village of North Aurora*, 935 F.2d 909 (7th Cir. 1991), and *Buckhalter v. Pepsi-Cola General Bottlers, Inc.*, 820 F.2d 892 (7th Cir. 1987), is misplaced. In *Pirela*, unlike this case, there was a state court judgment entitled to full faith and credit. *Pirela*, 932 F.2d at 910-11. In *Buckhalter*, although the Seventh Circuit did find an unreviewed administrative decision to be preclusive, the court did not specify whether the administrative decision had claim-preclusive or issue-preclusive effect. 820 F.2d at 895-97. The court clearly could have reached its decision solely based on issue preclusion, however, because the facts had actually been litigated before the administrative body. *See id.* at 894. In contrast, defendants in the case at bar argue for preclusion of claims that have never been litigated. Because of this distinction, and because more recent Seventh Circuit cases recognize that under Illinois law plaintiff's need not raise § 1983 claims at the administrative level, *e.g.*, *Durgins*, 272 F.3d at 843, this court finds that claim preclusion is inapplicable.

5

Commission's order claim-preclusive, this court will not.[5]

Defendants argue that Watt could bring his § 1983 claims only if he sought judicial review of the Commission's order. But defendants have cited no cases supporting that contention. In *Durgins*, the only case they cite, the Seventh Circuit did not require that a plaintiff appeal the administrative decision in order to seek relief for violations of § 1983. The Seventh Circuit simply held that if a plaintiff does seek judicial review of the administrative decision, he must bring his § 1983 claims in that action. *Durgins*, 272 F.3d at 843. In fact, the Supreme Court has explicitly held that plaintiffs are not required to exhaust state remedies before bringing § 1983 claims. *Patsy v. Bd. of Regents of the State of Fla.*, 457 U.S. 496, 516 (1982). Watt's choice not to appeal the Commission's order does have certain consequences, as discussed below, but the consequence is not claim preclusion.

B. Issue Preclusion

Although defendants' argument for claim preclusion fails, defendants correctly contend that the Commission's factual findings regarding the Incidents are entitled to issue- preclusive effect. The Supreme Court in *Elliott* explicitly held that in § 1983 cases

> when a state agency acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the [state administrative] agency's factfinding the same preclusive effect which it would be entitled to in the State's courts.

---

[5]In a very recent district court opinion, *Dyer v. Lumpkin*, No. 01 C 1691, 2002 WL 31056705 (N.D. Ill. Sept. 13, 2002), the court did give claim-preclusive effect to an unreviewed administrative decision, barring claims that had never been litigated. *Id.* at *3, 5-6. This court, however, respectfully disagrees with the holding in *Dyer*. *Dyer* relied upon *Durgins* and two other Seventh Circuit opinions, without noting that each of those decisions involved state court judgments rather than unreviewed administrative decisions. *Id.* at *5. Further, *Dyer* did not address whether giving claim-preclusive effect to an unreviewed administrative decision would unduly inhibit the plaintiff from pursuing her federal rights. *Cf. Waid*, 91 F.3d at 865.

6

478 U.S. at 799 (internal quotation marks and citations omitted). It is clear that the Commission was acting in a judicial capacity and that Watt had ample opportunity to litigate the issues, given that (1) the Commission is authorized by statute to adjudicate formal complaints against the City's police officers, *see* 65 ILCS 5/10-1-18, (2) the Commission conducted a five-day hearing that included opening and closing arguments from counsel and extensive testimony and evidence regarding the Incidents from more than twenty-five witnesses, including Watt on two separate days, and (3) Watt does not even suggest that the Commission was not acting in a judicial capacity or that he lacked an adequate opportunity to litigate the facts regarding the Incidents. Thus, the dispositive question is whether Illinois courts would give issue-preclusive effect to the Commission's factual findings. The answer to this question is yes.

To determine whether an Illinois court would prohibit Watt from relitigating the Commission's findings of fact, the court finds the statutory requirements of the Administrative Review Law compelling evidence in favor of issue preclusion. If he wanted to challenge the Commission's order, including its factual findings, Watt should have initiated an administrative-review action in accordance with the Administrative Review Law. 65 ILCS 5/10-1-45.[6] Had Watt appealed the Commission's order, the reviewing court would have accepted the Commission's factual findings as "prima facie true and correct," 735 ILCS 5/3-110, and would not have disturbed those findings "unless they [were] contrary to the manifest weight of the evidence." *Mastro v. Ill. Dep't of Rev.*, 667 N.E.2d 594, 597 (Ill. App. Ct. 1996). Because Watt

---

[6] The parties dispute whether under 65 ILCS 5/10-1-45, the Administrative Review Law governs judicial review of decisions made by the Civil Service Commission of a municipality like Highland Park, whose population is less than 500,000. The wording of the statute is clear: the Administrative Review Law applies to judicial review of final administrative decisions of any municipality's Civil Service Commission without regard to its population. 65 ILCS 5/10-1-45.

elected not to challenge the Commission's order, that order—including the factual findings—is now unappealable. *Lockett v. Chicago Police Bd.*, 549 N.E.2d 1266, 1268 (Ill. 1990). More to the point, under Illinois law, "fact issues finally decided in an administrative proceeding that is judicial in nature precludes litigation of those same fact issues in a subsequent proceeding." *Vill. of Oak Park v. Ill. Dep't of Employment*, 772 N.E.2d 951, 953 (Ill. App. Ct. 2002). Because Illinois courts give agency factual findings preclusive effect, so too must this court. *Elliott*, 478 U.S. at 799. Watt may not relitigate the Commission's factual findings regarding the Incidents.

C. Failure to State a Claim

In Counts I and II, Watt alleges that defendants retaliated against him in violation of his First Amendment right to speak out on matters of public concern. Defendants argue that the complaint fails to adequately allege that Watt's speech was constitutionally protected. Determining whether speech by a public employee is constitutionally protected is a two-step process. The first step is to determine, in light of the content, form, and context of the speech, whether the employee speaks "as a citizen upon matters of public concern." *Connick v. Myers*, 461 U.S. 138, 147 (1983). The second step is to balance the "interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968).

Just one of the several statements alleged in the complaint is sufficient to overcome defendants' objection. Paragraph 21 of the complaint alleges that on March 11, 1999, Watt was quoted in the *Pioneer Press–Highland Park* newspaper "as being concerned with the administration's treatment of pro-union police officers and coming under harsh scrutiny for the

8

most minor infractions," and as calling for Chief Dahlberg's removal. Defendants argue that this speech was not constitutionally protected because it related primarily to internal office affairs.

Watt's public criticism of the police department's treatment of pro-union officers appears to be essentially indistinguishable from the speech found to be constitutionally protected in *Wulf v. City of Wichita*, 883 F.2d 842 (10th Cir. 1989): a letter to the Attorney General alleging interference with rights of police officer to join a union. *Id.* at 857-58. Indeed, the Tenth Circuit was so confident of its conclusion that it rejected a qualified immunity defense on the ground that "a reasonable police chief should have been on notice that it would be a violation of the First Amendment to terminate a police officer who wrote a letter alleging, *inter alia*, anti-union animus on the part of the police chief . . . ." *Id.* at 867. Watt's public allegations of anti-union activities by the police administration may well qualify for constitutional protection.[7]

Comparison of the present case to the two cases cited by defendants only bolsters this conclusion. In *Durgins*, a police officer sought First Amendment protection for an administrative complaint she had filed concerning the discipline two officers received for an incident of horseplay and for falsifications she had included in her employment application.[8] 272 F.3d at 842-43. *Gonzales v. City of Chicago*, 239 F.3d 939 (7th Cir. 2001), is at least in the ballpark—the subject matter of the speech was police misconduct—but the distinctions, as with *Durgins*, are manifold: "The form of [a police officer's] speech (routine official reports), the

---

[7] Defendants do not even attempt to argue that Watt's interests in making this speech were outweighed by any legitimate interest of the City, so no *Pickering* analysis is presently required.

[8] Although the *Durgins* court expressed skepticism as to whether such speech deserved constitutional protection, it should be noted that the court rested its decision on different grounds altogether. *Id.* at 843-45.

9

content of the speech (required opinions on misconduct), and the context (pursuant to duties of the job), all indicate that [the officer] did not speak 'as a citizen' on a matter of public concern." *Id.* at 941. Subsequent Seventh Circuit case law makes clear that the "holding in *Gonzalez* is limited to routine discharge of assigned functions, where there is no suggestion of public motivation." *Delgado v. Jones*, 282 F.3d 511, 519 (7th Cir. 2002). Statements made in a newspaper article plainly fall outside *Gonzales*'s sphere of influence.

In a closely related argument, defendant William Scott contends that because the only allegations in the complaint referring to him concern his actions on October 22, 1999, *before* Watt's views concerning the department's "racial profiling and corrupt practices" were expressed publicly in January 2000, these actions cannot have been retaliatory. (Defs.' Mem. Supp. Mot. Dismiss at 10.) Because this court has already found that Watt sufficiently alleges that he engaged in constitutionally protected speech as early as March 1999, this argument fails. Watt may well be able to prove that Scott's actions were motivated by his public allegations of anti-union activity.

Defendants argue that "the allegations about Chief Dahlberg simply do not support a finding of retaliation or harassment." (*Id.* at 11.) This argument reflects a gross misunderstanding of the purpose of a complaint in federal court. Notice pleading is all that the federal rules require. Accordingly, a Rule 12(b)(6) motion does not test the merits of plaintiff's claims, but instead tests only the legal sufficiency of the complaint. *Pickrel v. City of Springfield*, 45 F.3d 1115, 1118 (7th Cir. 1995). "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). Consistency in this

context demands more than logical possibility: the complaint must "provide the defendant with fair notice of the claim." *Scott v. City of Chicago*, 195 F.3d 950, 951 (7th Cir. 1999). That Watt volunteered more details concerning other defendants does not undermine his claim against Dahlberg. Nowhere does Watt's complaint purport to be a complete and exhaustive review of every relevant piece of evidence. It would be perfectly consistent with the complaint, in both the weak sense of logically possible and the strong (and critical) sense of foreseeable, for Watt to adduce facts showing that Dahlberg, the object of at least some of Watt's criticism, encouraged or even ordered his subordinates to harass Watt. This possibility suffices to compel rejection of defendants' argument for dismissal of Count II as to Dahlberg.

Defendants Allan Rattunde and Carl Weaver assert that all of the allegations against them are related to two charges that the Commission found to be meritorious.[9] The Commission's findings, defendants argue, preclude Watt's retaliation claims. It is true, given this court's holding on issue preclusion, that Watt can no longer maintain that these charges were "baseless." (Am. Compl. ¶ 32.) However, Watt may still succeed in proving that the bringing of these charges was motivated by retaliation and harassment. He must eventually show that his protected speech was a but-for cause of defendants' actions. *Mt. Healthy City Sch. Dist. Bd. Of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). The existence of a permissible motive, standing alone, is not fatal. If comparable misconduct by officers who did not engage in constitutionally protected speech was generally ignored, then it may be quite reasonable to infer that the charges

---

[9]This assertion overlooks Watt's allegations that Rattunde and Weaver each made a practice of following Watt around and scrutinizing his activities after he made public statements regarding racial profiling and corruption. (Am. Compl. ¶¶ 56, 75.) Because the Commission made no findings concerning Watt's charge of unfairly heightened scrutiny, these allegations alone rebut these two defendants' issue preclusion arguments.

11

against Watt, even though true, were motivated by his speech.

The City and Dahlberg level the same flawed argument against Watt's § 1983 retaliatory discharge claim (Count III). Because the Commission found that Watt had committed several violations warranting termination, the argument goes, Watt cannot show that the retaliatory motive was the cause of his termination. As this court recently had occasion to explain, the existence of a legitimate reason for firing an employee is relevant only if it was the real reason.

> *McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273 (1976), is a good illustration. There, the Court held that a former employee stated a claim for race discrimination where he alleged that he was fired for misappropriating company property but that the company did not terminate an employee of a different race who was guilty of the same infraction. "While [defendant] may decide that participation in a theft of cargo may render an employee unqualified for employment, this criterion must be 'applied alike to members of all races,' and Title VII is violated if, as petitioners alleged, it was not." *Id.* at 283 (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973)). Defendants' attempt to distinguish *McDonald* is misguided. Although it is true that different burden-shifting schemes apply in Title VII cases than in political affiliation cases, *Nelms v. Modisett*, 153 F.3d 815, 818 (7th Cir. 1998), both types of cases ultimately turn on the fundamental notion of "but for" causation. *Compare McDonald*, 427 U.S. at 282 n.10, *with Johnson v. Univ. of Wisconsin-Eau Claire*, 70 F.3d 469, 482 (7th Cir. 1995).
> The only case cited by defendants that even comes close to calling into question this principle is *Conner v. Reinhard*, 847 F.2d 384 (7th Cir. 1988). In that opinion, the Seventh Circuit describes *Mt. Healthy* as holding that "a plaintiff cannot prevail in her claim of retaliatory discharge if the defendant can show that the decision to terminate the plaintiff would have been reasonable even in the absence of the protected conduct."[10] *Id.* at 393. One might read this statement as

---

[10](This footnote does not appear in the original.) In the case at bar, defendants quote identical language from *Khuans v. School District 110*, 123 F.3d 1010, 1014 (7th Cir. 1997). Beyond merely citing *Mt. Healthy* and *Conner*, that case provides no reasoning to support this proposition, which was apparently unrelated to the holding. Defendants also cite *Thomsen v. Romeis*, 198 F.3d 1022 (7th Cir. 2000), and *Stagman v. Ryan*, 176 F.3d 986, 999 (7th Cir. 1999). Each cites the *Conner* language but also recognizes that but-for causation is the key. *Thomsen*, 198 F.3d at 1028 ("[Plaintiff] failed to meet his burden of proving that he would not have been terminated in the absence of protected conduct ...."); *Stagman*, 176 F.3d at 999 (explaining that defendant can prevail by establishing "that it would have dismissed the plaintiff even if the

suggesting that the existence of a sufficient, legitimate reason for termination, even if not actually relied upon, is an adequate defense to a retaliatory discharge claim. But that would be a serious misreading of *Mt. Healthy*, which is focused on actual causation, not *ex post* rationalization. The issue in *Conner* was whether a given reason was legitimate, not (as here) whether the decision-maker actually relied upon that reason. In that context, the above-quoted statement is perfectly consistent with *Mt. Healthy*. Indeed, the *Conner* opinion in the immediately subsequent sentences demonstrates an appreciation of the critical importance of "but for" causation. *See id.* (explaining that if the plaintiff shows that constitutionally protected conduct was a motivating factor, "[t]he burden then shifts to the defendant to prove that the plaintiff would have been discharged even if the protected conduct had not occurred") (citing *Mt. Healthy*, 429 U.S. at 287).

*DeMauro v. Lauren-Maltese*, No. 98 C 8318, slip op. at 2-4 (N.D. Ill. Sept. 9, 2002) (original footnotes omitted).

Watt's failure to sue the Commission is insignificant for present purposes. Even if the Commission acted in good faith and with no retaliatory motive of its own, Watt can still prevail in his retaliatory discharge claim by showing, for example, that he would never have been formally charged and referred to the Commission absent his constitutionally protected activities or that the defendants tainted the process. Relatedly, defendants argue that Watt fails to state a retaliatory discharge claim against Dahlberg because Watt alleges only that Dahlberg recommended Watt's termination, not that he was the final decisionmaker. However, "[t]he requisite causal connection is satisfied if the defendant set in motion a series of events that the defendant knew or should reasonably have known would cause others to deprive the plaintiff of her constitutional rights." *Conner*, 847 F.2d at 397. The line of cases relied upon by defendants does not support the notion of absolute nondecisionmaker immunity. *See, e.g., Paluck v. Gooding Rubber Co.*, 221 F.3d 1003, 1010 (7th Cir. 2000) ("[I]f a manager with a retaliatory

---

protected conduct had not occurred").

13

motive is involved in the decision to terminate an employee, that retaliatory motive, in some circumstances, may be imputed to the company, even if the manager with a retaliatory motive was not the ultimate decisionmaker."). Far from advancing defendants' cause, *Paluck* undermines their argument that the absence of claims against the Commission dooms Watt's retaliatory discharge claim. *Id.*; *cf. McCann v. Ruiz*, 788 F. Supp. 109, 121-22 (D.P.R. 1992) (holding that the ultimate decisionmaker was not a necessary and indispensable party to a § 1983 action).

Finally, defendants (in what should now be a familiar refrain) argue that because the Commission's order conclusively establishes that the City had a valid reason for terminating Watt, his state law claim for retaliatory discharge fails. This argument is based on the premise that "[u]nder Illinois law the existence of a valid reason for termination defeats a retaliatory discharge claim." (Defs.' Mem. Supp. Mot. Dismiss at 14.) As is true under federal law and tort law generally, the premise is false. If Watt would not have been terminated but for his protected activities, the existence of another sufficient reason for his termination is irrelevant. Neither of the two cases cited by defendants on this point supports a contrary result. *See Clemons v. Mech. Devices Co.*, 704 N.E.2d 403, 406 (Ill. 1998) ("[I]f an employer chooses to come forward with a valid, *nonpretextual* basis for discharging its employees *and the trier of fact believes it*, the causation element required to be proven is not met.") (emphasis added); *DePluzer v. Village of Winnetka*, 638 N.E.2d 1157, 1162-63 (Ill. App. Ct. 1994) ("[T]he issue in these cases is not whether the employer treated the employee fairly, but whether the discharge was in retaliation for [the employee's protected activities].").

## III. CONCLUSION

For all of the foregoing reasons, defendants' motion to dismiss is denied.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATED: September 30, 2002