UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RODNEY J. WATT, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 01 C 6230 |
| v. | ) | |
| | ) | |
| CITY OF HIGHLAND PARK, et al., | ) | Judge Joan B. Gottschall |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Rodney J. Watt ("Watt") sues the City of Highland Park, Illinois ("Highland Park" or the "City") and four individual defendants, Deputy Police Chiefs Timothy Benton and Michael Caskey, Police Sergeant Gerald Halley (now retired) and Police Chief Daniel Dahlberg (now retired), under 42 U.S.C. § 1983 and Illinois state law in a four-count amended complaint. Watt's counts are entitled: (i) Retaliation, Harassment & Intimidation Against City of Highland Park (42 U.S.C. § 1983) (count I); (ii) Retaliation, Harassment & Intimidation Against Individual Defendants (42 U.S.C. § 1983) (count II); (iii) Retaliatory Discharge Against City of Highland Park (42 U.S.C. § 1983) (count III); and (iv) Retaliatory Discharge (Illinois Tort Claim) (count IV). The City has moved for summary judgment on all counts.[1] For the reasons discussed below, the City's motion is granted as to all counts, except count II. As to count II, the City's motion is granted with respect to Benton, Caskey and Halley, and denied with respect to

---

[1] Defendants have also filed a motion to strike certain of Watt's L.R. 56.1(b)(3) responses to defendants' L.R. 56.1(a) statement of facts. In issuing this opinion, the court has considered properly supported facts and disregarded facts that are irrelevant, are disguised argument, or are otherwise not properly before the court. Accordingly, defendants' motion to strike is denied.

1

Dahlberg.

## BACKGROUND[2]

In its September 30, 2002 order, *Watt v. City of Highland Park*, No. 01 C 6230, 2002 U.S. Dist. LEXIS 18847 (N.D. Ill. Sept. 30, 2002) ("2002 Order"), the court agreed with defendants' argument that factual findings made by the Civil Service Commission of Highland Park ("Commission") in ordering Watt's termination "are entitled to issue-preclusive effect," meaning that the court accepts the factual findings contained in the Commission's "Findings, Final Decision and Order" ("Commission Order") as to Watt's dismissal, which was entered November 1, 2001. *Id.* at *11. The Commission Order resulted from a Statement of Charges, filed July 31, 2001, which statement was filed by Dahlberg for the purpose of requesting that the Commission terminate Watt's employment.

The Commission Order mentions thirty-seven disciplinary charges against Watt, and after

---

[2] At the outset, the court notes that both parties' filings are deficient in a number of respects, needlessly complicating resolution of the instant motion for summary judgment. Neither party's briefing provides the court with a coherent overview of the facts relevant to the motion. Both parties do provide the statements of facts required of plaintiffs and defendants by Local Rule 56.1, but these separate required filings are poor substitutes for clearly setting forth and developing the relevant facts in a party's brief. *See Malec v. Sanford*, 191 F.R.D. 581, 585 (N.D. Ill. 2000) ("56.1 statements do not abrogate a party's obligation to recite its version of facts in its supporting memorandum."). Defendants have supplied an incomplete factual overview in their motion for summary judgment (but not in the supporting memorandum), and in so doing have ignored the court's Standing Order Regarding Motions for Summary Judgment by failing to support consistently those facts that are alleged with citation either to its LR 56.1 statement or to the record itself. *See* Standing Order § I ("It is very helpful if citations to facts in the memorandum are to both the 56.1(a)(1) documents establishing the fact *and* to the 56.1(a)(3) statement.")(emphasis in original); *see also Malec*, 191 F.R.D. at 583, 586 (noting that "[f]actual allegations not properly supported by citation to the record are nullities" and advising that parties' memoranda cite the relevant 56.1 statements); *see also Albrechtsen v. Board of Regents of University of Wisconsin System*, 309 F.3d 433, 436 (7th Cir. 2002) ("'Judges are not like pigs, hunting for truffles buried in' the record.")(quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)).

five days of hearings in which Watt participated, with the aid of counsel, Watt was found guilty on twenty-one of these charges. These charges were brought in the department's disciplinary complaints CR 00-16, CR 00-029, CR 00-030, CR 00-056, and CR 00-068. These complaints resulted from five incidents occurring between February 15, 2000 and December 17, 2000. The charges and complaints are detailed with specificity in the Commission Order (and the Statement of Charges, which the Commission Order incorporates by reference), and include Watt's acts of insubordination, lying to his superiors at the Highland Park police department when questioned about his activities, failure to respond to calls, and false testimony to the Commission.

Watt maintains that the department's disciplinary actions and his termination proceedings were brought in retaliation for certain statements he made to the news media and during city council meetings regarding corruption and racial profiling in the Highland Park police department, as well as public statements he made with respect to Watt's opinion that Dahlberg should be removed from his position as chief of police.

## ANALYSIS

**Counts III and IV – Retaliatory Discharge**

*Count III*

Watt claims that the City and Dahlberg discharged him in retaliation for Watt's exercise of his First Amendment rights in publicly criticizing the Highland Park police department and Dahlberg. He brings his retaliatory discharge claim under 42 U.S.C. § 1983 against the City and Dahlberg (count III), and his retaliatory discharge claim under state law against the City alone (count IV).

As an initial matter, citing *DeGuiseppe v. Village of Bellwood*, 68 F.3d 187, 190 (7th Cir.

3

1995), defendants argue that the City cannot be liable for Watt's termination because the Commission was the final decisionmaker as to Watt's dismissal, and Watt has no evidence that the Commission's decision to terminate him was motivated in any part by his First Amendment-protected speech. Defendants are correct. In their respective L.R. 56.1 statements, the parties agree that the Commission has final decisionmaking authority with respect to the termination of Highland Park police officers.[3] *See also* 65 ILCS 5/10-1-18(b); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 482-84 (1986) (Whether an officer has final policy making authority is a question of state law.) As the plaintiffs did in *DeGuiseppe*, Watt has sued Highland Park as well as its (now former) chief of police for alleged retaliation for Watt's protected speech. As discussed above, the Commission Order's factual findings leading it to dismiss Watt for cause are presumptively true, and Watt has not made any attempt to present evidence (or even allegations) that the Commission itself had any retaliatory motive. Instead, Watt's attempts at proof of retaliatory motive are directed at Dahlberg and the other officers. Even though Dahlberg was the one who requested that the Commission hold a hearing and terminate Watt, *DeGuiseppe* holds (in a factually analogous situation) that "[b]ecause [the police chief] was not the final decision-maker with respect to [the discipline directed at plaintiff] his conduct cannot serve as the predicate to municipal liability . . .". *DeGuiseppe*, 68 F.3d at 190. Accordingly, summary

---

[3] Watt's L.R. 56.1(b)(3)(A) response number 7 reads:

7. Consistent with the authority set forth in 65 ILCS 5/10-1-18, the City has established a three-person Civil Service Commission (the "Commission"). Consistent with 65 ILCS 5/10-1-18(b), the Commission's duties and powers include final decision-making power regarding the termination of sworn Highland Park police officers.

**RESPONSE:** Undisputed.

4

judgment is granted for the City on count III.

Watt also attempts to bring count III against Dahlberg personally. Citing *Conner v. Reinhard*, 847 F.2d 384 (7th Cir. 1988), Watt argues that Dahlberg acted with a retaliatory motive when he "set in motion a series of events" that caused Watt's termination, namely recommending Watt for termination to the Commission. Dahlberg responds that he cannot be liable for Watt's discharge because he did not terminate Watt, the Commission did, and, because the Commission did not act out of retaliatory motive, there was no constitutional violation in which Dahlberg could have participated. Dahlberg is correct.

Personal liability under § 1983 must be based on a defendant's personal involvement in a constitutional violation. *Conner v. Reinhard*, 847 F.2d at 396; *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). The constitutional violation allegedly at issue in count III was Watt's discharge in retaliation for speaking his mind. The court has already held that Watt has not shown any evidence suggesting that the Commission was motivated by retaliatory animus in terminating him. Thus, the Commission did not deprive Watt of any constitutional rights, *i.e.*, there was no retaliatory termination to create a basis for Dahlberg's "setting in motion" liability. Watt implicitly acknowledges this as he only briefly argues that Dahlberg should be liable for his termination, and spends many pages and much detail addressing Dahlberg's and the other defendants' involvement in the non-discharge-related retaliatory acts alleged in counts I and II. Summary judgment on count III is granted for defendant Dahlberg.

*Count IV*

Watt has also sued the City on an Illinois tort claim of retaliatory discharge. The parties agree that this count is controlled by the recent Illinois Appellate Court decision *Cross v. City of*

*Chicago*, 815 N.E.2d 956 (Ill. App. Ct. 2004), *cert. den.* 212 Ill. 2d 530 (2004), holding that Illinois municipalities are immune from Illinois tort claims based on retaliatory discharge. Thus, defendants' motion for summary judgment is granted on count IV.

**Non-Discharge Retaliation – Counts I and II**

*Count I*

In count I against the City, Watt claims that the individual defendants' initiation of various disciplinary complaints against him constitutes a pattern or practice amounting to City-sanctioned harassment in retaliation for the exercise of his exercise of his First Amendment rights.

The court first considers the City's argument that there can be no municipal liability on count I. To establish liability for the City, under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), Watt must establish that "the deprivation of constitutional rights is caused by a municipal policy or custom." *Kujawski v. Bd. of Comm'rs of Bartholomew County*, 183 F.3d 734, 737 (7th Cir. 1999). "Unconstitutional policies or customs can take three forms: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a 'custom or usage' with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Rasche v. Beecher*, 336 F.3d 588, 597 (7th Cir. 2003).

Watt does not offer any evidence that there was an express policy of harassment in play, and focuses his main argument on the second prong. Watt argues that the harassment was longstanding (alleged to be from March 1999 through July 31, 2001) and was participated in by

a significant fraction of the City's police force (15 officers, amounting to approximately 20% of Highland Park's total police force). Unfortunately for Watt, he alleges only incidents of harassment pointed at him, and as this court has previously held, "a plaintiff's own isolated experiences are [generally] not enough to state a claim for municipal liability under a custom and practice theory." *Nebel v. City of Burbank*, No. 01 C 6403, 2003 U.S. Dist. LEXIS 4942, at *20 (N.D. Ill. Mar. 27, 2003) (Gottschall, J.), (citing *Wyrick v. City of Chicago*, No. 99 C 4777, 2001 U.S. Dist. LEXIS 3471 (N.D. Ill. Mar. 26, 2001) (granting motion to dismiss)); *Watson v. Vill. of Glenview*, No. 99 C 6811, 2000 U.S. Dist. LEXIS 3173, at *3 (N.D. Ill. Mar. 10, 2000) (same). Watt has not presented additional facts, such as providing examples of other officers who were disciplined after exercising their free-speech rights, to overcome this principle.

Watt also makes a brief attempt to satisfy the third prong by arguing that Dahlberg had final policymaking authority with respect to "the level of discipline that would be sought against Watt." (Plain. Memo. in Opp. at 11.) The court does not accept Watt's assertion that "policymaking authority" is a concept that can reasonably be applied in this case to individualized termination decisions. Put another way, the mere fact that Dahlberg had discretion in selecting which level of discipline to apply (from a set of options set by state law and City policy) does not mean that he is a final policymaker with respect to personnel policy. Furthermore, it is undisputed that Highland Park's elected city council, not the chief of police, sets personnel policy for City employees. *See also Cameli v. O'Neill*, No. 95 C 1369, 1997 U.S. Dist. LEXIS 9034, at *56-*57 (N.D. Ill. June 20, 1997) (supervisory personnel executing policy set by municipality not final policymaker for *Monell* purposes.) Watt makes no other argument on this issue, and provides no other

7

facts to establish that Dahlberg held policymaking power sufficient to ascribe liability to the City for his acts. Without a coherent argument, fleshed out by facts in support, Watt's apparent assertion that the mere fact that Dahlberg was in a supervisory position results in *Monell* liability to the City is unavailing. *Taylor v. Carmouche*, 214 F.3d 788, 791 (7th Cir. 2000).

The City's motion for summary judgment is granted as to Count I.

**Count II – Retaliation, Harassment and Intimidation Against Individual Defendants**

As may be clear from the discussion above, and in spite of the scattershot nature of Watt's (and, for that matter, defendants') arguments, the meat of Watt's lawsuit does not lie in the termination counts, but in the non-termination retaliation counts against the remaining individual defendants.[4]

Watt's non-termination retaliation claim against Dahlberg boils down to his assertion that, based on the infractions committed by Watt described in the Statement of Charges, Dahlberg recommended him for termination, but not other officers who committed similar improper acts but did not publicly criticize the police department or Dahlberg.

A three-step analysis applies to claims of retaliation based on a plaintiff's First Amendment protected speech: (1) was the speech constitutionally protected; (2) if so, was the defendant's action against plaintiff motivated by the constitutionally protected speech; and (3) if plaintiff can show that the constitutionally protected speech was a substantial or motivating factor in the defendants' action, can the defendants show that they would have taken the same

---

[4] Watt's first amended complaint originally named fourteen individual defendants in addition to the City. After prior voluntary dismissals of most of the individual defendants, the only ones left in the case are Dahlberg, Halley, Caskey and Benton.

action in the absence of plaintiff's exercise of his First Amendment rights? *Lifton v. Bd. of Educ. of Chi.*, No. 04-2501, 2005 U.S. App. LEXIS 14933, at *8 (7th Cir. July 22, 2005); *Kokkinis v. Ivkovich*, 185 F.3d 840, 843 (7th Cir. 1999) (applying three-step *Vukadinovich* analysis to non-termination first-amendment retaliation claim). The first two inquiries make up a plaintiff's *prima facie* retaliation case. The third inquiry allows a defendant to rebut plaintiff's case by showing that it would have taken the adverse action regardless of the plaintiff's protected speech.[5] Under this test, to survive summary judgment, Watt must show that a reasonable jury could conclude that the reasons stated by Dahlberg in the Statement of Charges are only part of the reason that Dahlberg recommended him for termination, and that another part of the reason Dahlberg recommended him was in retaliation for the exercise of his First Amendment rights. *Garrett v. Barnes*, 961 F.2d 629, 632 (7th Cir. 1992) (plaintiff must show that employer was at least partially motivated by employee's First Amendment-protected conduct in firing to make *prima facie* case).

As to the first element, the court's September 30 order makes clear that at least some of Watt's public comments about department policies were constitutionally protected speech. *Watt v. City of Highland Park*, No. 01 C 6230, 2002 U.S. Dist. LEXIS 18847, at *15-*17 (N.D. Ill.

---

[5] Normally, if the employer carries its burden in the third step of the analysis, then the burden shifts back to the plaintiff to show that the proffered reasons for the employment action were pretextual. *Vukadinovich v. Bd. of Sch. Trs. of N. Newton Sch. Corp.*, 278 F.3d 693, 699 (7th Cir. 2002). This final shifting of the burden is inapplicable here due to the unique facts of this case. The court must accept the Commission Order's factual findings as true, *i.e.*, that Watt was fired for cause. This precludes giving Watt an opportunity to show that the stated reasons for his firing were exclusively a pretext to cover up discriminatory motives, as would be required if defendants carried their (third element) burden to show that they would have fired Watt for cause even absent his protected speech. Still, Watt has a chance to win at trial even without the ability to show pretext if he is successful in making his *prima facie* case and defendants fail to rebut it.

Sept. 30, 2002). The parties do not address this issue in their briefing at this stage of the case.

With respect to the second element, the Commission Order (which, to recall, is based on Dahlberg's Statement of Charges) establishes that there was ample cause to fire Watt. The Commission Order details many infractions by Watt that caused his dismissal, including failure to respond to calls, failure to follow reasonable orders (insubordination), and lying both to his superiors prior to his dismissal hearing and to the Commission in the course of that hearing. *See Vukadinovich*, 278 F.3d at 699 ("[W]e have consistently held that insubordination constitutes a legitimate justification for an adverse employment action.") Watt's response to this is, as it must be,[6] that his constitutionally protected speech was also a factor in his firing.

First, Watt notes that several official disciplinary actions were brought against him in close temporal proximity to his public statements about the department and Dahlberg. The court has reviewed the record citations provided by Watt to support this, and they consist merely of affirmations that the disciplinary proceedings in question were brought during the same general time as his protected speech. While this may be somewhat suggestive of discriminatory intent, it is not enough by itself to allow a reasonable jury to decide in Watt's favor. *Compare Filipovic v. K & R Express Sys., Inc.,* 176 F.3d 390, 399 (7th Cir. 1999) (plaintiff may establish causal link if termination occurred close in time to protected activity), *with Lifton*, 2005 U.S. App. LEXIS 14933, at *9 ("It is not enough to rely merely on the fact that the discipline chronologically followed the protected activity.") (citing cases). Watt also points out that Dahlberg never

---

[6] The court notes that neither party has cited the applicable test and clearly pointed to facts in support of its position. Rather, the operative facts and arguments are presented by both parties in scattershot fashion, leaving the court to attempt to impose the correct analytical framework on the facts submitted.

recommended any other officer for termination during his approximately 12-year tenure as chief of police. Again, while this may be suggestive of retaliatory motivation, it is not enough to carry Watt's burden on summary judgment.

Next, and more persuasively, Watt marshals evidence that other officers who committed similar infractions to Watt's - but who did not publicly criticize the department or chief - were treated more leniently by Dahlberg, *i.e.*, were not recommended for termination.[7] Dahlberg's recommendation that Watt be terminated was based on incidents where Watt committed acts of insubordination, left his beat without permission, lied to superior officers when questioned about his conduct, and failed to respond to at least two different calls. Additionally, the Commission found that Watt lied to the Commission during its hearing. With respect to insubordination, Watt points to an incident in which an Officer Dabrowski[8] was off his beat, and committed insubordination when he refused to return to his beat at the request of a superior officer, even to the point of becoming abusive in his manner. Sergeant O'Neill also testified that he had witnessed Detective Carbajal being insubordinate to Commander Cohen within the period between 2000-2003. Watt offers additional deposition testimony to support his claims that, during Dahlberg's tenure as chief, other officers left their beats without consequence and failed to attend to calls with limited or no consequences.

Watt also presents deposition testimony supporting a laundry list of other major and minor incidents involving other Highland Park police officers that went unpunished or were

---

[7] Watt's factual bases for his contentions are established mainly through citations to deposition testimony of other Highland Park police officers.

[8] All officers mentioned who are not defendants in this action are deponents who are current or former members of the Highland Park police force.

subject to minimal discipline, most notably including incidents in which other officers lied in official proceedings. For example, Watt points to deposition testimony purporting to establish that Officer Williamson, after assaulting a fellow officer, lied during the ensuing investigation, but received only a 30-day suspension from Dahlberg. In addition, during Dahlberg's tenure an Illinois state court found that Officer Tellone committed perjury in testimony before a grand jury, but Officer Tellone was not terminated, and was later promoted to Sergeant. *See People v. Hunter*, 698 N.E. 2d 230 (Ill. App. Ct. 1998). Watt also points to deposition testimony of at least one other incident in which Officer Tellone lied to superior officers during an investigation and was not terminated.

These incidents (along with the proximity of at least some of the department's disciplinary actions against Watt to his public pronouncements) are sufficient to allow a jury to infer that at least part of Dahlberg's intent in recommending Watt for termination was motivated by Watt's public statements about Dahlberg and the department. *Kmetz v. State Historical Soc'y*, 304 F. Supp. 2d 1108, 1135 (W.D. Wis. 2004) (In proving retaliatory intent in First Amendment retaliation claim, plaintiff may rely on "forms of circumstantial evidence, such as 'suspicious timing, ambiguous statements oral or written . . . and other bits and pieces from which in inference of discriminatory intent might be drawn.'") (quoting *Troupe v. May Department Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994)).

With this, the burden shifts back to Dahlberg to show that he would have recommended Watt for termination regardless of any retaliatory motivation. Dahlberg offers no argument to establish this specifically, but in the course of his arguments for summary judgment on count III, Dahlberg asserts that his request to the Commission that Watt be terminated was prompted by

12

recommendations in a report on Watt submitted by an outside auditor, Robert Johnson ("Johnson Report"). This argument is inapposite; Dahlberg asserts that he requested Watt's dismissal "based solely on the [Johnson] Report," but the record citations he provides to support this reveal only that Dahlberg received the Johnson Report and complied with its findings by recommending Watt's termination to the Commission. While the existence of an (assertedly) independent report recommending Watt's termination certainly supports a reasonable inference that Dahlberg would have fired Watt regardless of any discriminatory burden, it does not conclusively establish it. Dahlberg could instead have suspended Watt or otherwise ignored the Johnson Report, as Dahlberg's L.R.56.1 filings point out that he did with respect to several of Johnson's recommendations for specific charges against Watt.

Accordingly, defendants' motion for summary judgment is denied on count III with respect to defendant Dahlberg.

With respect to the other individual defendants, Caskey, Halley and Benton, Watt has brought forth no evidence allowing a reasonable inference that they took any retaliatory action against him. Watt's one-half page argument begins with a reference to his statement of additional facts. The court has reviewed these facts, and they consist simply of descriptions of incidents where the defendants disciplined Watt. Even reading these facts in a light most favorable to Watt yields no inference of retaliatory intent; as far as the court can tell from the plain facts, these disciplinary acts were perfectly normal. Watt then alleges that the defendants broke certain of the City's procedural rules for disciplining officers with respect to Watt's discipline, and baldly asserts, without citation to authority or explanation of any applicable logical inference, that "[t]hese rule violations provide evidence of the unconstitutional

13

motivation of Defendants." (Plain. Memo. Opp. at 13.) This "argument" fails. *United States v. Andreas*, 150 F.3d 766, 769 (7th Cir. 1998) ("We have held time and again that perfunctory and undeveloped arguments (even constitutional ones) are waived.") (citing *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991)). Defendant's motion for summary judgment on count II is granted with respect to defendants Halley, Caskey and Benton.

### *Damages*

Finally, defendants argue that Watt has admitted that he has sustained no damages related to his non-termination claims. Defendants point out that in his Rule 26(A)(1)(C) disclosure letter, as well as in his interrogatory answers and deposition testimony, Watt claimed damages substantially similar to the following (summarized from Watt's Rule 26(A)(1)(C) disclosure): (1) back pay; (2) $2,000,000 in compensation for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life "as compensation for the tort of retaliatory discharge"; (3) compensation for loss of earning capacity; (4) punitive damages for each individual defendant; (5) reinstatement; and (6) restoration of all seniority and pension benefits that Watt would have received had he stayed employed with the City. Watt responds that defendants were on notice of his general claim for pain and suffering because Watt disclosed expert reports to that effect from clinical psychology providers. The court also notes that Watt's prayer for damages in the amended complaint is general, and does not limit his pain and suffering damages to his (now dismissed) count for the tort of retaliatory discharge. If Watt were to be successful on his sole remaining claim against Dahlberg for harassment, he may face a difficult task ascribing specific damages to that act (i.e. separating his non-termination damages from those flowing from his termination), but the court will not preclude Watt's damages at this

juncture.

## CONCLUSION

For the reasons stated herein, defendant's motion for summary judgment is granted with respect to counts I, III, and IV of Watt's amended complaint, and granted with respect to all defendants except Dahlberg on count II. Defendants' motion for summary judgment is denied on count II only with respect to defendant Dahlberg as discussed herein.

ENTER:

_/s/_____
JOAN B. GOTTSCHALL
United States District Judge

DATE: September 20, 2005